**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Richard Kludka, | ) | No. CV-08-1806-PHX-DGC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Qwest Disability Plan, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Richard Kludka has filed a motion for summary judgment. Dkt. #37. Defendants Qwest Disability Plan, Qwest Communications Inc. Health Insurance Plan, and Qwest Employee Benefit Plans have filed a cross motion for summary judgment. Dkt. #36. Both motions are fully briefed. Dkt. ##42, 43, 41, 44. For reasons that follow, the Court will deny Kludka's motion for summary judgment and grant Defendants' motion.[1]

**I.    Background.**

Kludka worked for Qwest and was a participant in the Qwest Disability Plan ("the Plan"). The Plan promised long-term disability benefits for participating employees who, because of disability, were "unable to engage in any occupation or employment, which inability is supported by Objective Medical Documentation," or who were "unable to engage in any occupation or employment . . . other than a job that pays less than 60% of [the

---

[1] Plaintiff's request for oral argument is denied. The parties have thoroughly briefed the issues and oral argument will not aid the Court's decision. *Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999); *see also* Fed. R. Civ. P. 78.

Participant's] Base Pay at the time the Participant terminates employment due to the Disability." Dkt. #36-10 at 10-11. Under the terms of the Plan, participants receiving long-term disability benefits are subject to periodic reviews to assess their conditions.

The Plan is funded by Qwest. The Plan administrator is the Employee Benefits Committee ("EBC") "appointed by the Executive Vice President of Human Resources of Qwest[.]" *Id.* at 14. The Plan provides that the EBC may delegate its responsibilities as Plan administrator to a third party administrator "by entering into a contract" for the third party to act as the Plan administrator. *Id.* at 16. EBC entered into a contract with Reed Group Ltd., which does business as Qwest Disability Services ("QDS"). *See* Dkt. #36-11 at 2-39. Based on this contract and the terms of the Plan, QDS acted as the third party administrator and had discretionary authority to administer the Plan and "determine a Participant's . . . eligibility for benefits under the plan[.]" Dkt. #36-10 at 18; Dkt. #36-11 at 2. QDS is paid a flat-rate fee for its services. Dkt. #36-11 at 2, 17-18.

Kludka began receiving disability benefits on July 19, 1999 due to "Major Depressive Disorder, Panic Disorder with Agoraphobia and Post Traumatic Stress Disorder." Dkt. #37-1, ¶ 2. In 2006, QDS informed Kludka that his eligibility for benefits was under a regular review. As part of the review, QDS obtained an independent medical opinion dated June 10, 2006 from Dr. Kelly Clark, a psychiatrist, who opined that Kludka no longer was disabled and gradually could return to work. Dkt. #36-8 at 7-11. QDS also obtained a vocational report from Genex Services, Inc., which determined that Kludka could work in several occupations and earn 60% or more of his former base salary. *Id.* at 1-6. Based on these reports, QDS notified Kludka on June 22, 2006 that he was ineligible for continued long-term disability. Dkt. #36-4 at 70-74.

Kludka questioned this determination, and on August 31, 2006, QDS hired Dr. Robert Bevan to conduct an independent medical examination. Dkt. #36-7 at 77-88. After examining Kludka, Dr. Bevan determined that "Kludka could work two hours daily currently, and as his avoidance of leaving home diminishes, he could presumably increase his hours

back to full-time without restriction." *Id.* at 87. In late January of 2007, QDS obtained another written medical review from Dr. Clark, who again reviewed Kludka's file and spoke by phone with Kludka's treating physician, Dr. Doumani-Semino. *Id.* at 34. Dr. Clark again opined that Kludka no longer was disabled. *Id.* at 28-30. Based on the opinions of Dr. Clark and Dr. Bevan, and the Genex vocational report, QDS notified Kludka on February 5, 2007 that his claim for long-term disability benefits was denied. Dkt. #36-7 at 31-36. The denial letter stated that Kludka would be reinstated to his previous employment position with accommodations. *Id.* at 31.

Kludka appealed the decision on July 24, 2007. The next day, QDS sent Kludka a letter acknowledging his appeal and advising him that he could submit additional materials, including documentation from his medical providers. Dkt. #36-7 at 24. QDS subsequently extended the time for Kludka to provide documents to September 19, 2007. *Id.* at 23. Kludka provided documentation from his treating psychiatrist (Dr. Shelley Doumani-Semino) and his treating therapist (Owen Golden). After receiving the additional materials, QDS obtained new opinions from Dr. Marcus Goldman, a psychiatrist (Dkt. #36-4 at 41-47), and Dr. Leonard Sonne, a medical doctor (Dkt. #36-4 at 34-40). Dr. Sonne examined medical records, including records showing that Kludka suffered a heart attack and underwent triple bypass surgery in May of 2007. Dkt. #36-4 at 34. Dr. Goldman also examined documents provided by Kludka, including documentation of Kludka's condition from his psychiatrist and therapist. *Id.* at 41-47. Both Dr. Goldman and Dr. Sonne found that Kludka was capable of working. Based on these opinions, QDS again determined that Kludka was not eligible for long-term disability benefits and, on October 9, 2007, informed Kludka by letter that it was upholding the denial of his benefits. *Id.* at 21-33. Kludka filed this lawsuit. Dkt. #1.

## II.     Legal Standard.

### A.     Standard of review.

The Employee Retirement Income Security Act of 1974 ("ERISA") allows a participant to bring an action "to recover benefits due to him under the terms of his plan."

29 U.S.C. § 1132(a)(1)(B). Generally, a district court conducts de novo review of a denial of benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan "unambiguously provide[s] discretion to the administrator" to interpret the terms of the plan and make final benefits determinations, however, the determination is reviewed for an abuse of discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.2006) (en banc). But if "an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well, we review de novo the administrator's decision to deny benefits." *Id.* at 971; *see also Anderson v. Suburban Teamsters of N. Ill. Pen. Fund Bd. of Trustees,* 588 F.3d 641, 646-47 (9th Cir. 2009).

**B.     The Complexities of ERISA Abuse of Discretion Review.**

The Supreme Court and the Ninth Circuit have addressed ERISA abuse-of-discretion review in several cases. Because the law on this subject is complex, the Court will discuss it at some length before turning to the facts of this case.

As noted above, in cases where the administrator is granted discretion to interpret the plan and make benefits decisions, and has not engaged in wholesale and flagrant violations of ERISA procedures, abuse of discretion review applies. That review itself, however, is complicated by questions of conflict of interest, consideration of extrinsic evidence, and summary judgment procedures.

A court applying abuse of discretion review must first determine whether the administrator is operating under a conflict of interest. The presence of such a conflict "must be weighed as a factor in determining whether there is an abuse of discretion." *Abatie*, 458 F.3d at 965 (internal quotations and citations omitted). Although the Supreme Court has not "catalogue[d] the full range of types of conflicts of interest," it has suggested "that a conflict exists when a plan administrator (which acts as a fiduciary toward the plan participants, who are beneficiaries) is also the sole source of funding for an unfunded plan." *Id.* at 965 n.5.

In determining whether a conflict of interest exists, "[t]he district court may, in its discretion, consider evidence outside the administrative record." *Id.* at 970. When the alleged existence of a conflict is presented to the court in a motion for summary judgment and extrinsic evidence is considered, the court must apply the traditional rules of summary judgment – it must view the evidence in the light most favorable to the non-moving party. *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009).

### 1. If There Is A Conflict of Interest.

If the court finds a conflict of interest – whether on summary judgment or in a bench trial – the court must look to other factors outlined by the Supreme Court in *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343, 2351 (2008), and by the Ninth Circuit in *Abatie*, 458 F.3d at 968-69, to determine how much weight to accord the conflict of interest in the abuse of discretion analysis. Factors a court may consider include "any evidence of malice, of self-dealing, or of a parsimonious claims-granting history," whether "the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; fails to credit a claimant's reliable evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." *Abatie*, 458 F.3d at 968 (internal citations omitted). The court may also consider whether "the administrator has taken active steps to reduce potential bias and to promote accuracy." *Glenn*, 128 S. Ct. at 2351.

In conducting the abuse of discretion review, the court then weighs the conflict of interest – as influenced by these additional factors – in determining whether the administrator abused its discretion. Contrary to some suggestions, the existence of a conflict and the consideration of these other factors does not alter the standard or review. The standard remains abuse of discretion, with the conflict and the additional factors being weighed along with other evidence in the administrative record to decide whether the administrator abused its discretion. *See Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 631 (9th Cir.

2009) (stating that the existence of a conflict of interest does not alter the standard of review, but rather alters its application); *Abatie*, 458 F.3d at 965 (stating that if a conflict of interest exists, "abuse of discretion review applies" and any conflict must be weighed as a factor in determining whether there is an abuse of discretion).[2]

## 2. If There Is No Conflict of Interest.

If a court finds no conflict of interest, the court must conduct a traditional abuse of discretion review based on the administrative record alone. Generally, extra-record evidence is not considered. *Abatie*, 458 F.3d at 970 ("The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise."); *Montour*, 588 F.3d at 632 ("Judicial review of an ERISA plan administrator's decision on the merits is limited to the administrative record."). An exception to this rule of record-only review arises when procedural irregularities by the administrator, although not sufficient to invoke de novo review, have nonetheless "prevented the full development of the administrative record. In that way the court may, in essence, recreate what the administrative record would have been had the procedure been correct." *Abatie*, 458 F.3d at 973.

Traditional abuse of discretion review has been described by the Ninth Circuit in these words:

---

[2] Although it may be a matter of semantics, the Ninth Circuit in *Nolan*, 551 F.3d at 1154-55, implies that the existence of a conflict of interest actually alters abuse of discretion review, making it a "tempered" abuse of discretion standard. This may reflect nothing more than the "skepticism" *Abatie* suggested can arise from a conflict of interest that appears to affect a claim determination. 458 F.3d at 968. But to the extent *Nolan* suggests the standard itself is altered, it appears to conflict with the plain language of *Abatie*, 458 F.3d at 965 (which was decided before *Nolan*), and *Montour*, 588 F.3d at 631 (which was decided after *Nolan*). Indeed, *Abatie* expressly rejected the "sliding scale" standard for abuse of discretion adopted by other federal courts, 458 F.3d at 967-68, a rejection confirmed in *Montour*, 588 F.3d at 631.

> Under the abuse of discretion standard, we must determine whether the plan administrator exercised its discretion reasonably. A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith. Indeed, an administrator's decision is not arbitrary unless it is not grounded on *any* reasonable basis.

*Sznewajs v. U.S. Bancorp Amended & Restated Supplemental Benefits Plan*, 572 F.3d 727, 734-35 (9th Cir. 2009) (internal citations and quotations omitted) (emphasis in original). The court may consider several factors in deciding whether discretion was abused, including "the quality and quantity of the medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records, whether the administrator provided its independent experts with all of the relevant evidence, and whether the administrator considered a contrary SSA disability determination, if any." *Montour*, 588 F.3d at 630 (internal citations and quotations omitted). As noted above, the court should also consider procedural irregularities that may have occurred when the claim was processed. *Abatie*, 458 F.3d at 973.

When conducting an abuse of discretion review of the administrative record on a motion for summary judgment, the court does not follow the usual rules of summary judgment. As the Ninth Circuit has explained in the ERISA context, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999) (overruled on other grounds by *Abatie*, 458 F.3d at 965). The Ninth Circuit recently confirmed that this statement remains good law for abuse of discretion reviews limited to the administrative record. *Nolan*, 551 F.3d at 1154.[3]

---

[3] The Ninth Circuit has not addressed a potential ambiguity. *Nolan* acknowledged and affirmed the rule in *Bendixen* that traditional summary judgment rules do not apply when a court conducts an abuse of discretion review of the administrative record in response to a summary judgment motion, but held that such rules do apply when the court is considering extra-record evidence to decide whether a conflict of interest exists and the weight to be accorded the conflict. *Nolan*, 551 F.3d at 1154-55. *Nolan* seemed to base this decision in part on the fact that the court was considering evidence outside the administrative record.

### 3. Summary.

To summarize, district courts generally apply de novo review to decisions denying benefits under an ERISA plan. Where the plan unambiguously provides discretion to the plan administrator to interpret the plan and make final benefit decisions, and the administrator has not engaged in flagrant and wholesale violation of ERISA procedural requirements, the standard shifts to abuse of discretion. When applying this abuse of discretion review, the court must determine whether the plan administrator operates under a conflict of interest. In making this determination, evidence outside the administrative record may be considered and traditional summary judgment rules apply if the question is presented by a summary judgment motion. If a conflict is found to exist, the conflict is considered as a factor in deciding whether the administrator abused its discretion, and several additional factors may be considered in deciding how much weight to accord the conflict. If no conflict of interest exists, traditional abuse of discretion review is conducted. The review generally is limited to the administrative record, although extra-record evidence may be considered if procedural irregularities prevented full development of the administrative record. The rules of summary judgment do not apply when a court conducts an abuse of discretion review limited to the administrative record, but, this Court concludes, do apply when extra-record evidence is considered.

### III. The Standard of Review in This Case.

The parties dispute whether the Court should apply de novo or abuse of discretion review. To determine which standard to apply, the Court must first determine whether the

_____

*Id.* As noted above, evidence outside the record may also be considered when no conflict of interest exists, abuse of discretion analysis is applied, but procedural irregularities by the administrator prevented full development of the administrative record. *Abatie*, 458 F.3d at 973. The Ninth Circuit has not explained whether traditional summary judgment rules apply if such an issue is presented by a summary judgment motion. For purposes of this decision, the Court will assume that they do.

Plan unambiguously provides discretion to QDS as the third party administrator to interpret the Plan and make final benefits determinations. *Abatie*, 458 F.3d at 963.

Kludka does not dispute that the plain language of the Plan accords discretion to the administrator, but argues that QDS was not at all relevant times the Plan administrator. Although QDS eventually became the third party administrator under the Plan, Kludka argues that QDS was not the administrator when it made the first two decisions terminating the claim. The Court disagrees. The Plan itself clearly states that the EBC has authority to delegate discretionary authority "by entering into a contract to administer STD Benefits and/or LTD Benefits under the Plan[.]" Dkt. #36-10 at 16. Qwest entered into a contract with QDS on April 1, 2004, in which QDS agreed to administer the Plan and accepted responsibility for making benefit determinations. Dkt. #36-11 at 2-39. Because the Plan expressly allowed the EBC to delegate this authority, and EBC did delegate the authority through the contract with QDS, QDS was a proper third party administrator as of April 1, 2004 – long before QDS made the benefits determination in this case.

Kludka argues that QDS did not actually become a valid third party administrator until the EBC ratified QDS on June 5, 2007. *See* Dkt. #36-10 at 52-53. Ratification by the EBC, however, is not required under the terms of the Plan in order for a third party administrator to be appointed. Rather, the Plan merely requires a contract by which the third party administrator accepts the delegation of discretionary authority. *Id.* at 16. Moreover, the ratification document itself states that the EBC had already delegated authority to third party administrators. The Court finds, on the basis of these undisputed facts, that the Plan unambiguously granted discretionary authority to any third party administrator who contracted with Qwest, and that the third party administrator was QDS at the time of Kludka's benefit termination decisions.

Because QDS had discretion to make benefit determinations, abuse of discretion review is appropriate unless the Court finds that QDS "engage[d] in wholesale and flagrant violations of the procedural requirements of ERISA." *Abatie*, 458 F.3d at 971. Kludka

argues that Defendants engaged in a flagrant procedural violation because QDS did not actually make the decision to deny his benefits, but instead outsourced this determination to the physicians who examined Kludka's medical records. Kludka contends that the deposition of Rani Dodson, the QDS "employee who wrote the final denial" of Kludka's benefits, shows that "Defendants essentially outsourced their ERISA fiduciary duties" to physicians such as Dr. Clark and Dr. Goldman, who "provided biased peer reviews." Dkt. #37 at 4.

A review of Dodson's deposition testimony shows that QDS did rely heavily on the opinions of the physicians it hired, including Dr. Bevan, Dr. Goldman, Dr. Clark, and Dr. Sonne. Dkt. #37-7 at 17 ("Since I'm not an RN, I would rely heavily on a physician making the decision."), 19 ("When we send [a file] for a physician review, we pay them to review [other evidence of disability like attending physician statements or medical records] and make a decision."). Viewing these facts in the light most favorable to Kludka, the Court cannot conclude that they show a wholesale and flagrant disregard of ERISA procedures requiring de novo review.

As the Ninth Circuit has explained, "de novo review is justified if the administrator's decision was so plagued with errors and 'so far outside the strictures of ERISA' that we cannot say the administrator actually exercised discretion." *Anderson*, 588 F.3d at 647 (quoting *Abatie*, 458 F.3d at 978). "Most procedural errors do not alter the abuse of discretion standard[.]" *Id*. Indeed, only "egregious" errors will give rise to that "'that rare class of cases' in which de novo review should apply." *Id*. at 648 (quoting *Abatie*, 458 F.3d at 972).

Kludka cites no authority to suggest that substantial reliance on outside medical consultants constitutes an egregious error under ERISA. Nor does the Court conclude that consultation with the experts in this case constituted an abrogation of QDS's discretionary duties. QDS conducted a periodic review of Kludka's condition as required by the Plan, consulted a doctor and Genex before making the initial decision, arranged for an in-person medical examination by a third doctor when Kludka protested, and consulted two more

doctors when Kludka appealed. Each step in the process was at QDS's behest. The fact that QDS consulted and relied heavily on several different physicians certainly does not suggest a flagrant or wholesale disregard of ERISA protections. Plan administrators should consult and rely on medical experts when making disability determinations. To make such decisions without the close assistance of medical professionals might well produce inaccurate and unfounded claim denials. The fact that doctors are retained and relied on heavily for such a medical decision is entirely reasonable and foreseeable.

Considering the evidence in the light most favorable to Kludka, the Court concludes that he has not shown that this is the rare case where de novo review should apply because of egregious ERISA violations. The Court therefore will review QDS's decision for an abuse of discretion.

**IV.     Conflict of Interest.**

The next question is whether QDS was operating under a conflict of interest. The Court may consider evidence outside the administrative record and must apply the traditional rules of summary judgment, drawing all inferences in favor of Kludka. Doing so, the Court finds that QDS was not operating under a conflict of interest.

Kludka argues that "Defendants operated under a structural conflict of interest because the Plan is a self insured trust." Dkt. #37 at 2. The Court disagrees. The Plan was funded by Qwest and administered by QDS. A structural conflict occurs "where it is the employer that both funds the plan and evaluates the claims." *Glenn*, 128 S. Ct. at 2348. Because QDS evaluates the claims and Qwest funds the Plan, no structural conflict of interest exists.

Kludka argues that there is a conflict of interest because QDS's founder, Dr. Pressley Reed, has expressed cynicism "regarding the medical industry, disability system and people who are disabled." Dkt. #42 at 4. In support of this argument, Kludka cites a five-minute comment made by Dr. Reed as part of a 2005 panel discussion in London England. Dkt. #42-1 at 11-12. Kludka contends from this comment and other writings of Dr. Reed that

the Plan had a conflict of interest when it hired QDS because "[a]n employer choosing an administrator in effect buys insurance for others and consequently . . . may be more interested in an insurance company with low rates than in one with accurate claims processing." *Glenn*, 128 S. Ct. at 2350.

The Court cannot conclude that the remarks of Dr. Reed show that Qwest chose QDS as an administrator because it believed QDS would deny claims. Indeed, Qwest retained QDS before the 2005 remarks were even made. *See* Dkt. #36-11 at 2-39 (QDS hired on April 1, 2004). More importantly, Kludka has produced no evidence that QDS has a record of inaccurate claims processing, denies claims too frequently, or denies claims unfairly. Kludka does not suggest that Dr. Reed had any involvement in the evaluation or decision of this case. Nor does Kludka dispute that QDS is paid a flat-rate fee under the Qwest contract; its income under the contract is not influenced by its granting or denial of claims. *See* Dkt. #36-11 at 2, 17-18. In the absence of some evidence related to QDS and its operation of the Plan – as opposed to statements made by QDS's founder in an unrelated context – Kludka has not shown a conflict of interest in this case.

Kludka argues that the doctors hired by QDS to provide opinions were operating under a conflict of interest because at least one, Dr. Sonne, "confirmed he has reviewed as many as 400 files in a month and 20-30% of his annual income was derived at that time by performing medical records reviews." Dkt. #44 at 4. Kludka provides no evidence, however, that the doctors hired by QDS receive additional money if they deny claims or that QDS stops hiring doctors who frequently grant claims. And Kludka presents no evidence that Dr. Sonne has a history of reviewing claims unfairly. The mere fact that 20 or 30% of his income is derived from record reviews does not show that he is biased, and certainly does not show that QDS is operating under a conflict of interest in its administration of the Plan. What is more, Kludka's claim was reviewed by three additional doctors, including one who examined Kludka personally, none of whom is alleged to have derived significant income from record reviews. All of the doctors agreed that Kludka no longer was disabled.

**V.    Abuse of Discretion Review.**

Because the Court has found no conflict of interest, the Court must conduct a traditional abuse of discretion review based on the administrative record.  The Court may consider extra-record evidence only if QDS engaged in procedural irregularities and consideration of the evidence is necessary to "recreate what the administrative record would have been" had QDS followed all ERISA procedures. *Abatie*, 458 F.3d at 973; *Montour*, 588 F.3d at 632.  If the extra-record evidence would not assist the Court in recreating the administrative record, the evidence should not be considered.  *Abatie*, 458 F.3d at 973.

As discussed above, "[a] plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith.  Indeed, an administrator's decision is not arbitrary unless it is not grounded on *any* reasonable basis." *Sznewajs*, 572 F.3d at 734-35 (internal quotations and citations omitted) (emphasis in original).

**A.    Kludka's Arguments.**

Kludka makes numerous arguments as to why QDS abused its discretion.  The Court will consider them in turn.

**1.    Consideration of Kludka's Evidence.**

Kludka argues that QDS abused its discretion by failing to consider or credit evidence in support of his claim.  Kludka discusses the opinions of Dr. Shelley Doumani-Semino (his treating psychiatrist), Owen Golden (his therapist), and his brother, all of whom maintained that he was disabled. Dkt. #37 at 6-7.  He states that QDS must have ignored this evidence, even though the "final denial on October 9, 2007 recites Kludka's evidence," because the denial "does not provide a reason it was unreliable or it was rejected" and because "the only new evidence on review" were the physician reports from Dr. Goldman and Dr. Sonne. Dkt. #37 at 7.

"Plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence . . . [b]ut . . . courts have no warrant to require administrators automatically to

accord special weight to the opinions of a claimant's physician[,] nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The Supreme Court has further stated that QDS has no "burden of explanation" as to why it credited the evidence from its hired physicians over the evidence from Kludka's treating physicians. *Id.* at 831.

Moreover, Kludka has failed to show that QDS or the peer review physicians ignored evidence from his doctors. Dr. Bevan's report makes clear that he read and considered Kludka's past records, including statements and progress reports from Dr. Doumani-Semino and Mr. Golden. Dkt. #36-7 at 84-86. Dr. Clark spoke personally with Dr. Doumani-Semino about Kludka. Dkt. #36-7 at 34. The reviews conducted by Dr. Clark (Dkt. #36-7 at 89-93), Dr. Goldman (Dkt. #36-4 at 41-47), and Dr. Sonne (Dkt. #36-4 at 34-40) all include discussions of Kludka's past records and information from Dr. Doumani-Semino and Mr. Golden. The Court cannot find that Kludka's evidence was arbitrarily ignored or discounted by QDS.

### 2. Kludka's Deteriorating Condition.

Kludka argues that QDS abused its discretion because his condition actually deteriorated from the time his benefits were awarded in 1999 to the time they were denied in 2007. He also argues that even though his condition significantly deteriorated between the time Dr. Bevan completed the in-person examination and the time Kludka's benefits were denied, QDS did not order another in-person examination.

Kludka cites *McOsker v. Paul Revere Life Insurance Co.*, 279 F.3d 586, 589 (8th Cir. 2002), for the proposition that an insurer's "previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments." In *McOsker*, the court was conducting a de novo review of a benefits denial. The court was not determining whether an administrator abused its discretion, nor did it state that an administrator would abuse its discretion by deciding to discontinue payments. Moreover, in

this case, four separate doctors considered Kludka's condition and medical history after 2006 and concluded that he no longer was disabled, a clear change from the 1999 opinions that resulted in the initial grant of his disability benefits.

Kludka also cites *Sheehan v. Metro. Life Insurance Co.*, 368 F. Supp. 2d 228, 255 (S.D.N.Y. 2005). *Sheehan* emphasizes the importance of an in-person psychiatric examination, noting that "Courts discount the opinions of psychiatrists who have never seen the patient." *Id*. At the request of QDS, however, Dr. Bevan conducted an in-person psychiatric examination of Kludka. Dkt. #36-7 at 77. *Sheehan* does not suggest that QDS's failure to conduct a second examination constituted an abuse of discretion.

### 3. Failure to Consider All Conditions.

Kludka argues that QDS abused its discretion by failing to consider all his medical conditions when it denied his claim. He notes that his disability claim during the years of 1999 through 2006 was based solely on his psychological disorders, but that after the denial of May 12, 2007, he suffered a heart attack and underwent triple bypass surgery which caused new disabilities. Dkt. #37 at 13. He contends that he informed QDS of this when he appealed his claim, but that QDS did not consider both his psychological and his physical disorders when evaluating his appeal.

The Court does not agree. On appeal, QDS obtained the opinions of both a medical doctor and a psychiatrist. The medical doctor noted that Kludka had undergone heart surgery and observed that his post-surgery physical examination was "completely normal," including an echocardiogram/stress test of his heart. Dkt. #36-4 at 39. The doctor found "no objective documentation of any restriction, limitation or impairment that would preclude full time sedentary work[.]" Dkt. #36-4 at 39. The psychiatrist found "no compelling evidence that he suffers from any significant mental disorder for which work or functionality would be precluded." *Id*. at 47. These doctors together addressed all of Kludka's conditions and

provided a reasonable basis for QDS's conclusion that the conditions did not warrant continued disability treatment.[4]

### 4. Objective Medical Findings.

Kludka argues that QDS abused its discretion because it denied Kludka's claim "based on an alleged lack of 'objective medical findings,'" which "conflicts with the plan's definition of the term," and based its decision "on erroneous findings of fact." Dkt. #37 at 14-15 (internal citations omitted). Kludka argues that the unreasonableness of QDS's denial is obvious because his claim was repeatedly approved from 1999 through 2006 and then suddenly denied in 2007. In support of this argument, Kludka cites *Taft v. Equitable Life Assurance Society*, 9 F.3d 1469, 1472-73 (9th Cir. 1993), for the proposition that it is an abuse of discretion for a plan administrator to make a decision without any explanation, in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact.

QDS provided a detailed explanation of its decision to deny benefits. Dkt. #36-4 at 21-33. Kludka has not shown that QDS made its decision without explanation, in a way that conflicts with the Plan, or on the basis of erroneous facts. QDS considered facts presented by Kludka and facts from its physicians and determined that Kludka was not eligible for benefits. That QDS's physicians disagreed with Kludka's treating physicians does not make their opinions erroneous or QDS's decision an abuse of discretion.

### 5. Dr. Bevan's Report and the Genex Report.

Kludka argues that Dr. Bevan's report was not reliable because he did not review any evidence for the 404 days that elapsed from the time of his in-person examination and the final denial. Dkt. #44 at 5. Kludka argues that QDS therefore did not view all the evidence

---

[4] In support of his argument, Kludka cites *Peterson v. Fed. Express Corp. Long Term Disability Plan*, CV-05-1622-PHX-NVW, 2007 WL 1624644, *26 (D. Ariz. June 4, 2007), for the proposition that a "failure to evaluate the aggregate effect of all of [a plaintiff's] impairments warrants a higher level of scrutiny." Because the medical doctor found Kludka's heart condition to impose no limitations, however, there is no reason to think that aggregating it with his psychological condition would have produced any different result.

related to the claim, resulting in an abuse of discretion.

The administrative record clearly shows that QDS did consider evidence obtained during the 404 days – Dr. Sonne and Dr. Goldman reviewed the evidence and included it in their reports. *See* Dkt. #36-4 at 34, 41-47. Given that two of QDS's doctors considered the evidence and reported it to QDS, the Court cannot find that QDS abused its discretion by failing to examine the evidence.

Kludka also argues that it was an abuse of discretion for QDS to rely on the Genex report "because the individual who authored the report never personally interviewed Kludka and did not review any of the aforementioned medical evidence which occurred over the 13 month period after the report was authored." Dkt. #44 at 6. As noted, QDS considered the evidence that arose after Kludka's initial claim denial. The fact that it was reviewed by doctors and reported to QDS, as opposed to being reviewed by Genex, does not show an abuse of discretion. The evidence was considered by professionals retained by QDS and provided a reasonable basis for its decision.

### 6. Procedural irregularities.

Kludka also argues that QDS committed several procedural irregularities which tainted the processing of his claim and which must be taken into account when determining whether QDS abused its discretion. *Abatie*, 458 F.3d at 974. Kludka argues that "Defendants also violated ERISA by having the same [] doctor, Kelly Clark, M.D. review Kludka's file during two (2) separate reviews," and contends that this is a procedural violation that must be considered when the Court conducts its abuse of discretion review. Dkt. #37 at 12 (internal citations omitted); Dkt. #42 at 14. Under 29 C.F.R. § 2560.503-1, "the health care professional engaged for purposes of a consultation [for appeal] . . . shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of appeal, nor the subordinate of any such individual." Kludka argues that Dr. Clark reviewed his claim before the initial determination and again on appeal in violation of this regulation.

The Court does not agree. Dr. Clark did conduct two reviews, but both were at the initial claims stage and not on appeal. The first was on June 10, 2006 (Dkt. #36-8 at 7-11), the second on January 30, 2007 (Dkt. #36-7 at 28-30). Kludka's claim for benefits was denied on February 5, 2007, *see* Dkt. #36-2 at 8, and he appealed on July 24, 2007, *see* Dkt. #36-7 at 24. On appeal, QDS obtained the opinions of two new doctors, Dr. Goldman and Dr. Sonne. Dkt. #36-4 at 41-47; Dkt. #36-4 at 34-40. QDS did not violate 29 C.F.R. § 2560.503-1.

Kludka also argues that QDS changed its reason for denying his claim. An administrator "must provide a plan participant with adequate notice of the reasons for denial," and if the administrator "tacks on a new reason for denying benefits in a final decision," he commits a procedural error because he "preclud[es] the plan participant from responding to that rationale." *Abatie*, 458 F.3d at 974. Kludka contends that the reason provided in the initial denial was different from the reason provided in the final denial.

On June 22, 2006, QDS denied the claim for the following reason: "Although objective medical information has been provided, it is insufficient to substantiate Disability." Dkt. #36-4 at 70. In a later denial, QDS stated that Kludka's "case was initially denied because the medical information provided does not contain objective medical documentation to support both the medical condition and any actual limitation(s) caused by the medical condition." *Id.* at 21-22. Kludka argues that these two explanations are different because the first states that he provided objective information and the second states that he did not. The Court disagrees, and finds that both reasons are the same: Kludka never provided sufficient objective medical information to support disability. The first statement says that Kludka provided objective medical information, but that it was insufficient to show a disability. The second statement says that there was not sufficient objective medical information to show a disability. The second statement does not imply that there was no objective medical documentation, only that it was not sufficient to show a disability.

Kludka also argues that QDS engaged in a procedural violation by failing to engage Kludka in a meaningful dialogue so that he could know what documentation "needed to be submitted" to perfect his claim. Dkt. #37 at 12. Under 29 C.F.R. § 2560.503-1(f), an Administrator, when it denies a claim, is required to notify the claimant of the reason for the denial, reference to the pertinent plan provisions on which the denial is based, a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary," and information as to the steps that must be taken if the claimant wishes to submit his claim for review. This regulation is meant to provide "meaningful dialogue between ERISA plan administrators and their beneficiaries." *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997). Kludka asserts that QDS failed to explain to him what needed to be submitted to perfect his claim and, as a result, that he did not know what to submit.

The Court disagrees. In the initial denial letter of February 5, 2007, QDS notified Kludka of the reason for denial, *see* Dkt. #36-7 at 31 ("The medical information provided does not contain objective medical documentation" and Kludka "did not follow through on the treatment recommendation" of QDS), referenced the pertinent Plan provisions on which the denial was based, *see* Dkt. #36-7 at 35 (listing the specific Plan guidelines under which the claim was denied), described "additional material or information necessary for [Kludka] to perfect the claim" and explained "why such material or information is necessary," *see* Dkt. #36-7 at 35 (stating that, to show he is disabled under the language of the Plan, he must provide documentation that would support his claim, including "Objective Findings, diagnosis and any other information relevant to the nature and duration of the Disability, as well as a plan for treatment or management of the problem"), and provided information on the steps Kludka must take to appeal, *see* Dkt. #36-7 at 35 (explaining in detail the appeals process). Kludka cites no authority showing that this was insufficient under 29 C.F.R. § 2560.503-1(f).

**7.     Other arguments.**

Kludka makes two other arguments as to why QDS abused its discretion.  These arguments are based on information outside the administrative record.[5]  Because they are not part of the administrative record and Kludka has not shown that QDS engaged in procedural irregularities that resulted in an incomplete administrative record, the Court need not consider them as part of its abuse of discretion review.  *Abatie*, 458 F.3d at 970 ("The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise."); *Montour*, 588 F.3d at 632 ("Judicial review of an ERISA plan administrator's decision on the merits is limited to the administrative record.").

**B.     No Abuse of Discretion.**

The Court concludes that QDS's decision to terminate benefits was supported by a reasonable basis in the administrative record.  QDS's decision was supported by five medical opinions:  the report of Dr. Bevan based on an in-person psychiatric examination, two medical reviews by Dr. Clark, a review by Dr. Goldman, and a review by Dr. Sonne.  These opinions address Kludka's psychiatric and medical conditions, were based on reviews of his full medical records, and included consultation with his treating psychiatrist and consideration of the statements and progress reports from Dr. Doumani-Semino and Mr.

---

[5] Kludka argues that QDS abused its discretion by disregarding his subjective complaints, but he bases this argument entirely on deposition testimony that is not part of the administrative record. *See* Dkt. #37 at 16. Kludka also argues, as discussed above, that QDS engaged in a procedural violation by outsourcing its decision-making duty to physicians – a violation that, he contends, the Court should consider in conducting its abuse of discretion review even if it is not so flagrant as to warrant de novo review. *See* Dkt. #37 at 4. This argument also relies on deposition testimony that is not part of the administrative record. Although this argument does concern an alleged procedural irregularity, Kludka does not contend that it resulted in an incomplete administrative record and does not present evidence that would have been in the record had the alleged irregularity not occurred.

Golden.  Dkt. #36-7 at 84-86; Dkt. #36-7 at 89-93; Dkt. #36-4 at 41-47; Dkt. #36-4 at 34-40.  QDS also obtained a report from Genex concerning the jobs Kludka could hold.  Dkt. # 36-8 at 1-6.  The relevant considerations identified in *Montour* – "the quality and quantity of the medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records, whether the administrator provided its independent experts with all of the relevant evidence" – all weigh in favor of a finding that QDS did not abuse its discretion.  588 F.3d at 630 (internal quotations and citations omitted).  The Court has found no procedural irregularities that weigh in favor of finding an abuse of discretion.  *Abatie*, 458 F.3d at 974.

Under traditional abuse of discretion review, "an administrator's decision is not arbitrary unless it is not grounded on *any* reasonable basis."  *Sznewajs*, 572 F.3d at 734-35 (internal quotations and citations omitted) (emphasis in original).  Because QDS's decision was supported by a reasonable basis, Kludka has not shown that QDS abused its discretion.

**IT IS ORDERED:**

1.     Kludka's motion for summary judgment (Dkt. #37) is **denied**.

2.     Defendants' motion for summary judgment (Dkt. #36) is **granted**.

3.     The Clerk of Court shall terminate this action.

DATED this 7th day of April, 2010.

David G. Campbell
United States District Judge

- 21 -